IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 9, 2002

## STATE OF TENNESSEE v. ALLEN JEAN STEPHENS

**Appeal from the Circuit Court for Weakley County**
**No. CR119-2000     William B. Acree, Judge**

---

**No. W2001-01351-CCA-R3-CD  - Filed June 20, 2002**

---

Allen Jean Stephens appeals from his Weakley County Circuit Court conviction of Class D felony theft of property.  Stephens claims in this appeal that the lower court erred in admitting the telephone records of the business that the defendant defrauded in the course of committing his crime.  Because we hold that these records were erroneously but harmlessly admitted, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Colin Johnson, Dresden, Tennessee (at trial), and David L. Hamblen, Union City, Tennessee (on appeal), for the Appellant, Allen Jean Stephens.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Allen Strawbridge, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The defendant's conviction arises from the theft of speciality tires and wheels for his sport utility vehicle.  The evidence at trial demonstrated that a phone call was placed from the defendant's telephone in Martin, Tennessee to Custom Wheels Distributors, Inc. in Oklahoma City, Oklahoma for the purpose of ordering the tires and wheels.  The caller used a stolen credit card number and gave a false identity.  The caller asked that the items be shipped to Melvin Munden.  The defendant's wife is Mr. Munden's girlfriend's sister.  Additional calls were made from the defendant's residence to Custom Wheels prior to delivery of the tires and wheels.

The tires and wheels were delivered to Mr. Munden's residence, and the shipment was signed for by someone using the name Tom West.  An individual whose prior testimony was read into the record by the defense claimed that Mr. Munden was present when a UPS delivery was

made at Mr. Munden's residence, and the defendant was not present. This witness did not see whether Mr. Munden signed for the delivery. Although the witness did not know what was delivered, he did see some tires in plastic.

By all accounts, the defendant had the tires and wheels installed on his Chevrolet Tahoe by Reynolds Brothers Tire Company in Martin. Mr. Munden transported the tires and wheels to the tire store in his truck. The manager of the store testified that the defendant said he ordered the items from a magazine and paid $5,000 for them.

After learning of the fraudulent credit card transaction from a representative of Custom Wheels, Lieutenant Tommy Erwin of the Martin Police Department identified the defendant as a suspect because he recognized the distinctive tires and wheels on the defendant's late-model Chevrolet Tahoe as matching those in a photograph Custom Wheels provided to Lieutenant Erwin. The tires and wheels were so distinctive that Lieutenant Erwin testified he had never seen others like them. He interviewed the defendant about the tires and wheels. The defendant first claimed that he bought them in Florida for $2,700. He later recanted that story and said that he had purchased them for $1,200 from Mr. Munden.

The tires and wheels were specialty items which fit the defendant's vehicle. The purchase price from Custom Wheels was $3,200, and they had a retail value of approximately $5,000. Mr. Munden owned a 1970 Ford pickup truck on which the tires and wheels would not have fit, and further, they far exceeded the value of the Ford truck itself.

The sole issue raised on direct appeal is whether the trial court properly admitted a telephone bill listing telephone calls made from the defendant's residence in Martin, Tennessee to Custom Wheels in Oklahoma City, Oklahoma. This document was admitted via the testimony of Matt Knowles, a part-owner of Custom Wheels. The defendant claims that Mr. Knowles was not a proper witness to sponsor these records under Tennessee Rule of Evidence 803(6), while the state claims he was.

Rule 803(6) provides that notwithstanding its hearsay character, "Records of Regularly Conducted Activity" may be admitted. Tenn. R. Evid. 803(6). At the time of the trial in this case, that rule allowed admission of

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used on this

paragraph includes business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

Tenn. R. Evid. 803(6) (amended 2001). The rationale underlying this rule is that business records are inherently trustworthy and reliable and should be afforded admissibility without the necessity of calling several witnesses involved in the generation and maintenance of such records. *Alexander v. Inman*, 903 S.W.2d 686, 700 (Tenn. Ct. App. 1995).

In order for documents to be admissible under Rule 803(6), they must meet five criteria. *Id.* First, they must be made at or near the time of the recorded event; second, the person who is the source of the recorded information must have firsthand knowledge of the matters recorded; third, that individual must have a business duty to record the information; fourth, the business entity involved must customarily generate such documents; fifth, the methodology involved in providing the information or preparing the documents must not indicate untrustworthiness. *Id.* Furthermore, the evidentiary foundation for admission of the records must be provided by a "custodian or other qualified witness." Tenn. R. Evid. 803(6).

In this case, Matt Knowles testified that his business, Custom Wheels Distributors, Inc., is a wholesale distributor for a manufacturer. The manufacturer advertises in magazines, and these advertisements offer a toll-free telephone number for ordering. When a customer calls the toll-free number, the call is routed to Custom Wheels, which pays a monthly fee based upon the calls so routed. Custom Wheels receives a monthly bill for the total charge for all calls, although it may request an itemized statement. It made such a request for the time period pertinent to this case. Mr. Knowles testified about the contents of the itemized telephone bill, which reflected calls from the defendant's telephone number to the toll-free number. A copy of the bill itself was also offered as evidence.

The state in this case failed to lay a proper evidentiary foundation for admission of the telephone records. Mr. Knowles did not testify that the bill was created contemporaneously with the occurrence of the telephone calls listed thereon. Although he had firsthand knowledge that he had received certain telephone calls, he had no firsthand knowledge that the calls came from the location reflected on the bill. He did not testify that he had a business duty to record the information reflected on the bills; it is virtually certain from the evidence presented that he did not. Custom Wheels was not under a business duty to generate its telephone bill, nor is there any evidence that it actually did so. Further, Mr. Knowles gave no testimony about the methodology by which the information was provided and the bill generated so that its trustworthiness could be evaluated. Thus,

admission of the telephone bill as a record of regularly conducted activity was error.[1] *See* Tenn. R. Evid. 803(6).

The question that remains, then, is that of the effect of this error. The defendant, of course, maintains that the error was harmful, while the state argues, predictably, that any error was harmless. Upon consideration, we agree with the state.

The tires and wheels in question were purchased with a stolen credit card number. The purchaser had the items shipped to Melvin Munden's home, and an unknown person using the identity "Tom West" signed for the delivery. Mr. Munden and the defendant are known to each other, and the former's girlfriend is the sister of the latter's wife. At trial, the defendant claimed that Mr. Munden, apparently unilaterally, ordered the tires and wheels and then sold them to the defendant at far less than their market value. The defendant acknowledged that he knew the tires and wheels were worth much more than the $1,200 he allegedly paid for them.

There was also evidence that the tires and wheels were high-dollar, specialty items that fit the defendant's late-model Chevrolet vehicle but not Mr. Munden's older, lower-value Ford truck. The defendant told Mr. Munden that he had ordered the items and had them shipped to Mr. Munden's house. Mr. Munden denied that he had been the one who ordered the tires and wheels, and he denied selling them to the defendant. The defendant told an employee of the tire store where he had the tires and wheels installed on his vehicle that he had ordered them from a magazine and had paid $5,000 for them. When the defendant was questioned by the authorities, he initially claimed to have purchased the tires and wheels at a store in Florida for $2,700. Upon further questioning, he then claimed to have purchased the tires and wheels from Mr. Munden for $1,200.

Given the defendant's pre-trial admissions to multiple parties that he was the individual who purchased the tires and wheels, any error in the admission of the telephone records showing calls originating from the defendant's telephone was harmless. Accordingly, we affirm the defendant's conviction.

---

[1]Although not raised by the parties, we have also considered whether this evidence was not hearsay and admissible as a self-generated computer record. *See generally State v. Hall*, 976 S.W.2d 121, 146-47 (Tenn. Crim. App. 1998) (appendix); *State v. Meeks*, 867 S.W.2d 361, 374-76 (Tenn. Crim. App. 1993). The leading case in this regard is *State v. Meeks*. In *Meeks*, the state sought to introduce a computer printout from the telephone company showing calls traced from the victim's telephone number. *Meeks*, 867 S.W.2d at 374-75. The state offered evidence that the automated method by which this information was generated was highly reliable. *Id.* The defendant alleged that this evidence was inadmissible hearsay that did not qualify for the business record exception of Rule 803(6). *Id.* at 375. Relying on a "leading case" from another jurisdiction, the court considered the printout in question to be the computer's self-generated record of its operations, rather than hearsay human declarations stored in the computer and later retrieved. *Id.* (citing *Louisiana v. Armstead*, 432 So. 2d 837, 839-40 (La. 1983)). Thus, the touchstone of admissibility is the reliability of the computer system as regards functioning and accuracy. *Id.* In *Meeks*, the evidence was properly admitted. *See Meeks*, 867 S.W.2d at 376; *see also Hall*, 976 S.W.2d at 146-47. In the case under consideration, however, there is no evidence about the reliability of the computer system that purportedly recorded the originating telephone numbers of the calls to the toll-free number. Thus, we cannot justify the lower court's admission of the records on this alternative basis.

_____
JAMES CURWOOD WITT, JR., JUDGE